FILED
IN CLERKS OFFICE
2026 NOV 13 A 11: 16
U.S. DISTRICT COURT
DISTRICT OF MASS.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

CHRISTINA BAGNERA,
Plaintiff,

Civil Action No. ____________________

v.

**JURY TRIAL DEMANDED**

EQUIFAX INFORMATION SERVICES LLC,
Defendant.

**COMPLAINT**

1. Plaintiff Christina Bagnera asked Equifax Information Services LLC ("Equifax") for her credit file. The Fair Credit Reporting Act required Equifax to give her, clearly and accurately, all of the information in that file. On October 19, 2026, Equifax gave her a 32-page document that does not do that.

2. The document contradicts itself. For an auto lease that Equifax lists with a "Status" of "Charge Off" and a "Date of 1st Delinquency" of "03/13/2026," the same page marks every month from March through August 2026 as "Paid on Time." For thirteen accounts, Equifax prints a current balance and a recent "Date Reported" at the top of the account, but its month-by-month history for that same month reads "No Data Available."

3. These are not blank spaces on a page. Equifax's own document shows that it received and kept the information it did not disclose: it printed the dates on which the information was reported to it, it printed balances it does not carry into the history, and another nationwide consumer reporting agency disclosed, for the same accounts and the same months, figures that Equifax replaced with "No Data Available."

4. Without an accurate and complete disclosure, Ms. Bagnera cannot tell what Equifax is telling the lenders who check her credit, cannot verify the payment history Equifax keeps about her, and cannot use the dispute rights the statute gives her in an informed way.

5. Ms. Bagnera brings this action under 15 U.S.C. § 1681g(a)(1), and seeks statutory damages for Equifax's willful failure to comply under 15 U.S.C. § 1681n, or, in the alternative, actual damages for its negligent failure to comply under 15 U.S.C. § 1681o.

**JURISDICTION AND VENUE**

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and under 15 U.S.C. § 1681p, which permits an action under the FCRA to be brought in any appropriate United States district court.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District, received the disclosure at issue here, and suffered the harm alleged here.

**PARTIES**

8. Plaintiff Christina Bagnera is a natural person who resides at 60 Whipple Road, Billerica, Massachusetts 01821. She is a "consumer" as defined in 15 U.S.C. § 1681a(c).

9. Defendant Equifax Information Services LLC is a limited liability company with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax regularly assembles and evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, using interstate commerce, and is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" within the meaning of 15 U.S.C. § 1681a(p). Equifax does business in Massachusetts and may be served

through its registered agent, Corporation Service Company, 84 State Street, Boston, Massachusetts 02109.

## FACTUAL ALLEGATIONS

### A. The Disclosure

10. In response to Plaintiff's request for her file, Equifax provided Plaintiff with a written disclosure titled "Credit Report," bearing the date "October 19, 2026" and "Confirmation # 6292549849," consisting of 32 numbered pages (the "Disclosure"). A true copy of the Disclosure, with Plaintiff's date of birth redacted under Fed. R. Civ. P. 5.2(a), is attached as Exhibit A. Page citations below ("Ex. A at __") refer to the "Page __ of 32" number printed at the bottom of each page.

11. The Disclosure lists 30 credit accounts. For each account it prints a header section (including "Date Reported," "Balance," "Status," "Date of 1st Delinquency," and similar fields), a "Payment History" grid of months by year, and, for most accounts, a "24 Month History" table.

12. The Disclosure defines the symbols it uses in the Payment History grid. A green check mark is defined as "Paid on Time." A small gray square is defined as "No Data Available." Equifax prints the same gray square in header fields and in the cells of the 24 Month History table. In this Complaint, where Plaintiff states that the Disclosure "reads 'No Data Available'" for a field or month, she means that Equifax printed the gray square that its own legend defines with those words.

### B. Equifax's Duty to Disclose the File

13. Under 15 U.S.C. § 1681g(a)(1), every consumer reporting agency must, upon request, "clearly and accurately disclose to the consumer" "[a]ll information in the consumer's file at the time of the request," subject to exceptions not relevant here.

14. The FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g). The statute uses the term "file" in § 1681g(a)(1), not the narrower term "consumer report." Reading "file" to mean only what appears in a consumer report would make the two defined terms redundant. See Nunnally v. Equifax Info. Servs., LLC, 451 F.3d 768, 773 (11th Cir. 2006).

15. The disclosure duty in § 1681g(a)(1) is separate from the FCRA's accuracy provisions in §§ 1681e(b) and 1681i. A consumer need not show that information in the file is inaccurate to state a claim that the agency failed to disclose it. Blevins v. Equifax Info. Servs., LLC, No. 25-cv-23481-BB, Dkt. 24 (S.D. Fla. Dec. 29, 2025). Courts have denied Equifax's motions to dismiss § 1681g(a)(1) claims that, like this one, allege that Equifax held information that its disclosure omitted. Stafford v. Trans Union, LLC, No. 4:25-cv-00921-JDK-JDL, Dkt. 25 (E.D. Tex. Nov. 17, 2025), adopted over objections, Dkt. 30 (E.D. Tex. Feb. 25, 2026); Hardin v. Equifax Info. Servs. LLC, No. 5:25-cv-01374-HE, Dkt. 15 (W.D. Okla. Jan. 14, 2026).

16. The information at issue here is not internal record-keeping data. It is the monthly balance, past-due, payment, and payment-status information that lenders furnish to Equifax and that Equifax includes in the consumer reports it sells to lenders, landlords, and others who evaluate consumers. Plaintiff alleges that it is part of her "file" under any reading of that term.

**C. The Stellantis Auto Lease Account (*5955)**

17. The Disclosure lists an account from "STELLANTIS FINANCIAL SERVICES, - Closed," "Account Number: *5955," "Loan/Account Type: Auto Lease" (Ex. A at 4).

18. The header for that account states "Status: Charge Off," "Date of 1st Delinquency: 03/13/2026," "Date Major Delinquency 1st Reported: 09/30/2026," "Amount Past Due: $9,954," and "Charge Off Amount: $18,545" (Ex. A at 4).

19. On the same page, the Payment History grid prints the green "Paid on Time" check mark for every month from January 2026 through August 2026, including March, April, May, June, July, and August 2026, the six months that follow the "Date of 1st Delinquency: 03/13/2026" that Equifax printed in the header (Ex. A at 4).

20. Those statements cannot all be true. Equifax disclosed the account both as delinquent beginning March 13, 2026 and as paid on time in every month from March through August 2026. The Disclosure does not clearly and accurately disclose the payment history Equifax maintains for this account.

21. The Payment History grid for September 2026 reads "No Data Available," even though the header states that the major delinquency was "1st Reported" to Equifax on "09/30/2026" and that the account was "Date Reported: 09/30/2026" (Ex. A at 4).

22. In the 24 Month History table for this account, the "Past Due Amount" column reads "No Data Available" for each of the 23 months listed, from 10/24 through 08/26, and the "Actual Payment Amount" column reads "No Data Available" for each of the six months from 03/26 through 08/26 (Ex. A at 4). The header field "Date Closed:" and the header field "Date of Last Activity:" also read "No Data Available" (Ex. A at 4).

23. TransUnion LLC, another nationwide consumer reporting agency, issued Plaintiff a disclosure dated 10/19/2026 (File Number 390725577), a true copy of which, with Plaintiff's date of birth redacted, is attached as Exhibit E. For the same Stellantis lease (opened "10/12/2023," balance "$9,954"), TransUnion disclosed a "Past Due" amount and a "Paid"

amount for each month from April 2024 through September 2026, including "Paid: $0" for each month from March 2026 through August 2026, and disclosed "Date Closed" as "09/30/2026" (Ex. E at 2-3). The same furnisher therefore reported, for the same account and months, the information that Equifax's Disclosure replaced with "No Data Available."

**D. Thirteen Accounts Whose Headers Show Information the Histories Omit**

24. For each account listed below, the header prints a "Date Reported" and a "Balance" as of that date. The balance in the header differs from the balance in the most recent month of the account's 24 Month History table, and the Payment History grid for the month in which the "Date Reported" falls reads "No Data Available." Equifax thus received and kept information for that month, as its own "Date Reported" and "Balance" entries show, but did not disclose the account's payment status or history for that month.

| Account (as printed) | Ex. A page | "Date Reported" | Header "Balance" | Latest 24 Month History row | Grid month reading "No Data Available" |
|---|---|---|---|---|---|
| STELLANTIS FINANCIAL SERVICES, *2162 | 5 | 09/30/2026 | $21,990 | 08/26: $22,775 | Sep 2026 |
| CARRINGTON MORTGAGE SERVIC *5822 | 5 | 09/30/2026 | $354,556 | 08/26: $355,433 | Sep 2026 |
| AMERICAN EXPRESS *0123 | 6 | 10/07/2026 | $641 | 09/26: $2,900 | Oct 2026 |
| LIBERTY BANK MORTGAGE CORP *8935 | 7 | 09/30/2026 | $15,492 | 08/26: $16,018 | Sep 2026 |
| Beacon Bank *0001 | 10 | 09/30/2026 | $21,660 | 08/26: $22,041 | Sep 2026 |
| FM/SoFi Technologies, Inc. *6961 | 10 | 08/31/2026 | $20,218 | 07/26: $20,286 | Aug 2026 |
| FM/SoFi Technologies, Inc. *1496 | 11 | 08/31/2026 | $9,674 | 07/26: $9,755 | Aug 2026 |
| USAA FEDERAL SAVINGS BANK *4427 | 12 | 09/28/2026 | $398 | 08/26: $0 | Sep 2026 |

| | | | | | |
|---|---|---|---|---|---|
| AMERICAN EXPRESS *4323 | 13 | 09/25/2026 | $4,629 | 08/26: $2,704 | Sep 2026 |
| Bank of America *0328 | 15 | 09/23/2026 | $24,917 | 08/26: $22,289 | Sep 2026 |
| AMERICAN EXPRESS *7563 | 16 | 09/21/2026 | $5,176 | 08/26: $2,428 | Sep 2026 |
| APPLE CARD - GS BANK USA *3588 | 17 | 08/31/2026 | $1,539 | 07/26: $455 | Aug 2026 |
| SOFI BANK, NATIONAL - Closed *3771 | 19 | 12/01/2025 | $0 | 11/25: $19,260 | Dec 2025 |

25. These thirteen accounts appear under ten different furnisher names. The same omission appears on each of them, in the same position, in the same format.

**E. The Wells Fargo Account (*9749)**

26. For "WELLS FARGO CARD SERV," "Account Number: *9749," the header states "Date Opened: 03/13/2025," "Date of Last Payment: 03/12/2026," and "Date Reported: 09/25/2026" (Ex. A at 14). The 24 Month History table for this account lists a balance for every month from 03/25 through 08/26, including eight months of 2026 (Ex. A at 14-15). The Payment History grid, however, contains only a single row, for the year 2025, and contains no row for 2026 at all (Ex. A at 14). Equifax disclosed no payment status for any month of 2026 for this account.

27. Within the 2025 row, the grid reads "No Data Available" for April, July, August, and December 2025, although the 24 Month History table lists balances for each of those months ("$903," "$0," "$0," and "$0") (Ex. A at 14-15). For the same Wells Fargo account (opened "03/13/2025"), TransUnion disclosed a payment rating of "OK" for each of those four months and for each month from January 2026 through September 2026 (Ex. E at 13-14).

**F. Months Missing From the 24 Month History**

28. For "SOFI BANK, NATIONAL - Closed," "Account Number: *3771," the 24 Month History table lists the months 11/25, 10/25, 08/25, and 07/25, and omits 09/25, while the Payment History grid on the same page shows the "Paid on Time" check mark for September 2025 (Ex. A at 19).

29. For "NAVY FEDERAL CREDIT UNION," "Account Number: *2623," the 24 Month History table lists 03/26 and then 01/26, and omits 02/26, while the Payment History grid shows the "Paid on Time" check mark for February 2026 (Ex. A at 9-10).

**G. Past-Due Amounts on the American Express Account (*4323)**

30. For "AMERICAN EXPRESS," "Account Number: *4323," "Date Opened: 06/30/2022," the 24 Month History table reads "No Data Available" in the "Past Due Amount" column for each of the 23 months listed, from 10/24 through 08/26 (Ex. A at 13-14). For the same account (opened "06/30/2022," "Balance" "$4,629," "Date Updated" "09/25/2026"), TransUnion disclosed "Past Due: $0" for each month from April 2024 through September 2026 (Ex. E at 3-4).

**H. Equifax Possesses the Information It Did Not Disclose**

31. Equifax's own entries show that it received and kept the information at issue. For each account in Sections C through G, the Disclosure prints a "Date Reported" on which the furnisher reported the account to Equifax, and for the accounts in Section D it prints the current balance it received on that date. For the Stellantis lease and the Wells Fargo and American Express accounts, another nationwide consumer reporting agency disclosed, for the same accounts and months, the very figures and payment ratings that Equifax's Disclosure omits or replaces with "No Data Available."

32. On information and belief, lenders report consumer accounts to Equifax monthly using the industry's standard electronic format, which provides fields for, among other things, the current balance, the amount past due, the actual payment amount, the date of first delinquency, and a monthly payment-status code, so that each monthly report supplies these items for that month. Plaintiff cites these industry reporting practices solely as factual support for the allegation, on information and belief, that the furnishers reported this information to Equifax, and not as an independent basis for liability.

33. On information and belief, Equifax includes monthly payment status, balance, and past-due information in the consumer reports it sells to lenders and other users, including the users who obtained Plaintiff's consumer report as reflected in the Disclosure's inquiry section: "CAPITAL ONE," "Hard," "03/17/2025," and "FIRST RESPONDERS CREDIT UNION," "Hard," "04/07/2025" (Ex. A at 25).

34. In the alternative, if Equifax did not retain any of the information described above, it is because Equifax failed to maintain procedures requiring the information that furnishers report to be kept, which left Equifax unable to make the clear and accurate disclosure that § 1681g(a)(1) requires.

35. Whether each item that the Disclosure omits or reads as "No Data Available" reflects a furnisher's failure to report, as Equifax may contend, or Equifax's retention of the information and failure to disclose it, as Plaintiff alleges, can be determined only from Equifax's own systems and records and from the consumer reports Equifax has sold about Plaintiff. Plaintiff will seek that information in discovery.

36. Nothing elsewhere in the Disclosure, read as a whole, supplies the information identified in Sections C through G. The Disclosure does not state any payment status for the

months identified in Sections C, D, and E as reading "No Data Available"; it contains no 2026 payment status for the Wells Fargo account; it contains no entry for the missing months identified in Section F; and it contains no past-due amount for the months identified in Sections C and G.

37. An itemized inventory of each deficiency described in Sections C through G, by account, field, and month, quoting what the Disclosure states, is attached as Exhibit D. The inventory lists 88 items.

**I. The Pattern Reflects Equifax's Disclosure Practices**

38. The omissions follow a uniform pattern across accounts furnished by unrelated lenders, including an auto-lease company, mortgage lenders, banks, a credit union, and credit card issuers. The same kinds of information are missing in the same positions on the page. On information and belief, the omissions result from the automated templates and business rules Equifax uses to generate consumer file disclosures, which Equifax has used for years and which affect other consumers who request their files.

**J. Equifax Acted Willfully**

39. Equifax has long been on notice that § 1681g(a)(1) requires disclosure of all information in the consumer's file. Federal Trade Commission staff stated in an advisory opinion dated June 30, 2000 that a consumer reporting agency must disclose all information in the consumer's file (Exhibit C). Plaintiff cites that letter as staff guidance, not as binding authority.

40. On January 23, 2024, the Consumer Financial Protection Bureau issued an advisory opinion addressing the information that must be disclosed under § 1681g(a), 89 Fed. Reg. 4167 (Exhibit B). The Bureau withdrew that advisory opinion on May 12, 2025. Plaintiff

does not cite it as current guidance; she cites it because it put the nationwide consumer reporting agencies, including Equifax, on notice of the statute's requirements.

41. Equifax has itself litigated § 1681g(a)(1) claims alleging that its disclosures omitted information it held, and lost motions to dismiss those claims, in Stafford (E.D. Tex.), Hardin (W.D. Okla.), and Blevins (S.D. Fla.), cited above. Equifax continued to use the disclosure practices described here after those rulings.

42. Equifax's failure to comply with § 1681g(a)(1) was knowing, or at minimum reckless, within the meaning of Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007), and therefore willful under 15 U.S.C. § 1681n.

**K. Harm to Plaintiff**

43. Plaintiff requested her file to learn what Equifax was reporting about her. Because the Disclosure contradicts itself and omits information Equifax holds, Plaintiff cannot determine what Equifax tells the lenders and others who obtain her consumer report about her payment history, including whether it reports the Stellantis lease as delinquent since March 2026 or as paid on time through August 2026.

44. The Stellantis lease alone carries an "Amount Past Due" of "$9,954" and a "Charge Off Amount" of "$18,545" (Ex. A at 4). Without the account's accurate month-by-month history, Plaintiff cannot verify how Equifax reports the timing of that delinquency, which affects how long the information may be reported and how it is weighed by anyone who reviews her credit.

45. The contradictions and omissions also impair Plaintiff's ability to exercise her right under 15 U.S.C. § 1681i to dispute incomplete or inaccurate information in an informed way, because she cannot identify with confidence what Equifax's file actually contains. The

Supreme Court has recognized that the FCRA's disclosure requirements protect a consumer's interest in learning what is in her file so that she can correct errors before the information is disseminated. TransUnion LLC v. Ramirez, 594 U.S. 413, 440 (2021).

46. Plaintiff has spent time reviewing the Disclosure, comparing it with other records, and preparing this action as a result of Equifax's failure to provide a clear and accurate disclosure.

**COUNT I**

**Willful Violation of 15 U.S.C. § 1681g(a)(1) (15 U.S.C. § 1681n)**

47. Plaintiff repeats the allegations in paragraphs 1 through 46 above.

48. Equifax is a consumer reporting agency subject to 15 U.S.C. § 1681g(a)(1).

49. Plaintiff requested her file, and Equifax provided the Disclosure in response.

50. Equifax failed to clearly and accurately disclose to Plaintiff all information in her file at the time of the request, as described in paragraphs 17 through 38 above and in Exhibit D.

51. Equifax's failure was willful. Under 15 U.S.C. § 1681n(a), Equifax is liable to Plaintiff for actual damages or statutory damages of not less than $100 and not more than $1,000, for punitive damages as the Court may allow, and for the costs of this action.

**COUNT II**

**Negligent Violation of 15 U.S.C. § 1681g(a)(1) (15 U.S.C. § 1681o) (in the alternative)**

52. Plaintiff repeats the allegations in paragraphs 1 through 46 above.

53. In the alternative to Count I, Equifax negligently failed to comply with 15 U.S.C. § 1681g(a)(1). Under 15 U.S.C. § 1681o(a), Equifax is liable to Plaintiff for her actual damages and the costs of this action.

**PRAYER FOR RELIEF**

Plaintiff Christina Bagnera respectfully asks the Court to enter judgment in her favor and against Defendant Equifax Information Services LLC and to award: (a) statutory damages of not less than $100 and not more than $1,000 under 15 U.S.C. § 1681n(a)(1)(A); (b) actual damages under 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1); (c) punitive damages under 15 U.S.C. § 1681n(a)(2); (d) the costs of this action; (e) an order directing Equifax to provide Plaintiff a complete and accurate disclosure of all information in her file; and (f) such other relief as the Court considers just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:

Respectfully submitted,

Christina Bagnera, pro se
60 Whipple Road
Billerica, MA 01821
781-307-8036
christinabagnera@yahoo.com

**EXHIBITS**
Exhibit A - Equifax disclosure dated October 19, 2026, Confirmation # 6292549849 (date of birth redacted)
Exhibit B - CFPB Advisory Opinion, Fair Credit Reporting; File Disclosure, 89 Fed. Reg. 4167 (Jan. 23, 2024)
Exhibit C - FTC staff Advisory Opinion to Darcy (June 30, 2000)
Exhibit D - Itemized inventory of disclosure deficiencies
Exhibit E - TransUnion disclosure dated 10/19/2026, File Number 390725577 (date of birth redacted)